UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 24-274 |
| DONALD SMITH ) | |
| ) | |
| Defendant. ) | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND CONDITIONS OF RELEASE**

The United States of America, by and through undersigned counsel, hereby responds in opposition to Defendant's motion to amend the conditions of his pretrial release (Doc. 25).

Defendant is charged in an 8-count Indictment with defrauding the United States government through defense contracting. (Doc. 3). As alleged in the Indictment, Defendant, both directly and through third parties, agreed to provide products to the Defense Logistics Agency ("DLA") that were from approved sources and matched required specifications. (Doc. 3 at 3). He then ensured that products were provided to DLA pursuant to those contracts that did not match the required specifications. (Doc. 3 at 3). While Defendant ensured nonconforming products were provided pursuant to many contracts, the Indictment specifically lists eight contracts as examples, the bids for which are the wire transmissions underlying the eight wire fraud counts in the Indictment. (Doc. 3 at 6). Those eight contracts include contracts for machine bolts, socket head screw caps, and machine screws.

Notably, under standard operating procedures, DLA relies upon contractors to provide products that exactly match product specifications. (Doc. 3 at 2). That is, DLA does not inspect every item it receives, instead at times having products shipped directly to military personnel in the field without any inspection to see if the product is correct. (Doc. 3 at 2).

1

Defendant is currently on release pending trial. The terms of that release are relatively lenient: he must surrender his passport and not obtain a new one, must not possess a weapon, must not use controlled substances unless prescribed, must avoid contact with witnesses, must report contact with law enforcement personnel, and must not engage in government contracting, either directly or through third-parties. (Doc. 18).

Nevertheless, Defendant seeks to modify those conditions to enable him to perform on eight government contracts he has already been awarded. (Doc. 25). Those contracts include contracts for some of the same sorts of items for which the Indictment charges he previously fraudulently provided nonconforming products: machine bolts, socket head screw caps, and machine screws. His motion should be denied because permitting Defendant to engage in defense contracting work presents a danger to the DLA and to the military.

As an initial matter, Defendant can easily withdraw from the pending contracts by agreeing to a no-cost cancellation. DLA counsel confirmed on January 31, 2025 that DLA would gladly agree to the same. Accordingly, the only question is whether enabling Defendant to engage in government contracting reasonably assures the safety of any other person or the community. The answer is a resounding no.

The potential danger presented by Defendant's continued engagement in defense contracting is twofold. First, that DLA will suffer additional financial losses in paying for products that do not conform to requirements, on top of the losses it has already suffered. Second, that Defendant will provide nonconforming products to the military, which will be sent to the field without inspection.[1] In that scenario, the military, relying on parts from Defendant, may not be able to use certain equipment since it lacks, for example, the correct screw or nut or

---

[1] The undersigned will ask DLA to stop and inspect any items Defendant provides, but DLA is unable to confirm that it will be able to undergo the expense of doing so.

shackle.

Defendant has been given numerous opportunities to provide DLA with the products that he agreed to provide pursuant to contracts. Twice, he has been debarred for his repeated failure to provide the required products. (Doc. 3 at 3). Thereafter, Defendant engaged in the misconduct that is the subject of the pending Indictment.

Under either the government's or Defendant's likely explanation of the conduct underlying the Indictment, Defendant's motion should be denied. Using the government's view of the facts, as alleged in the Indictment, Defendant engaged in a years-long scheme to defraud DLA by providing nonconforming products, from which he profited greatly. Enabling such a person to continue to provide (probably nonconforming) products to DLA and receive payment for it presents a real danger for the reasons laid out above. Alternatively, under the defense's likely view of the facts, despite spending the past thirty years, or more, engaging in defense contracting, and despite repeated DLA attempts to educate him, including through two debarments, Defendant accidentally repeatedly provided nonconforming products to DLA. It is not clear why Defendant would have suddenly now learned what is required under DLA contracts, such that DLA can rely on him to provide the required products pursuant to the eight contracts at issue, some of which pertain to items similar to the items that were the subject of some of the contracts referenced in the Indictment.

Either Defendant is guilty of defrauding DLA and should not be permitted to cause further damage while awaiting trial, or he is so incompetent that he cannot possibly be expected to provide the right products pursuant to the eight contracts at issue. Either way, he presents a serious danger to DLA and the military if he is permitted to continue to engage in defense contracting. Defendant's motion should therefore be denied.

To the extent the Court is nevertheless inclined to grant Defendant's motion, the government asks that the Court's Order limit Defendant's permitted defense contracting work to providing products exactly matching the required specifications pursuant to the 8 contracts referenced in Defendant's motion. Such a requirement provides some level of protection for DLA and the military, and will also ensure that the Court can readily ascertain whether Defendant complied with the provisions of his supervised release.[2]

    Respectfully submitted,

    TROY RIVETTI
    Acting United States Attorney

    *s/ William Guappone*
    WILLIAM GUAPPONE
    Assistant U.S. Attorney
    NC ID No. 46075

---

[2] That is, if the government learns Defendant provided nonconforming parts, it would be a clear violation of the terms of Defendant's supervised release. In lieu of such language from the Court, the government would potentially have to prove that Defendant acted with the intent to defraud in order to establish that he committed a federal or state offense while under supervised release, which would likely complicate the analysis and any hearing.