UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 24-274 |
| DONALD SMITH ) | |
| ) | |
| Defendant. ) | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND CONDITIONS OF RELEASE**

The United States of America, by and through undersigned counsel, hereby responds in opposition to Defendant's motion to amend the conditions of his pretrial release (Doc. 38).

Defendant is charged in a 13-count Superseding Indictment with defrauding the United States government through defense contracting and failing to file required tax returns. (Doc. 31). As alleged in the Indictment, Defendant, both directly and through third parties, agreed to provide products to the Defense Logistics Agency ("DLA") that were from approved sources and matched required specifications. (Doc. 31 at 3). He then intentionally ensured that products were provided to DLA pursuant to those contracts that did not match the required specifications. (Doc. 31 at 3). While Defendant ensured nonconforming products were provided pursuant to many contracts, the Indictment specifically lists eight contracts as examples, the bids for which are the wire transmissions underlying the eight wire fraud counts in the Indictment.[1] (Doc. 31 at 6).

Notably, under standard operating procedures, DLA relies upon contractors to provide products that exactly match product specifications. (Doc. 31 at 2). That is, DLA does not inspect every item it receives, instead at times having products shipped directly to military personnel in

---

[1] Defendant contends that the government has not alleged nonconforming products were provided in response to 387 of Defendant's 392 contracts with the DLA. (Doc. 29). The government did not charge Defendant with a specific count of wire fraud for each nonconforming product provided by Defendant. However, the scheme to defraud is significantly broader than 5 contracts.

1

the field without any inspection to see if the product is correct. (Doc. 31 at 2).

Defendant is currently on release pending trial. His conditions of release initially prohibited him from engaging in government contracting, either directly or through third-parties. (Doc. 18). Subsequently, the Court modified those conditions to permit Defendant to fulfill eight outstanding contracts, relating to bids submitted by Defendant before he was indicted, though Defendant was required to provide products that matched the required specifications of those contracts. (Doc. 30).

In October 2024, DLA suspended Smith and Jamison's access to DIBBS, the system through which contractors bid on government contracts. In February of 2025, Smith and Jamison, Defendant, and a number of other companies associated with Defendant were suspended entirely from federal government contracting. Accordingly, Defendant is currently unable to bid on government contracts individually or through the suspended businesses, regardless of the terms of his supervised release. But Defendant is opposing his suspension, and is seeking reinstatement by DLA. As part of that process, he submitted a package of materials to DLA in February 2025 that called the Indictment "fabricated". (Exhibit 1 at 1). Notably, in his attempts to convince DLA to end his suspension, Defendant made a number of false representations, including that the Court "agrees with Smith & Jamison/Donald Smith regarding the [I]ndictment," though the Court has made no such ruling, and that the Department of Justice was "defeated" and somehow caused his suspension in response to an unspecified "loss in Court". (Exhibit 1 at 1).

Defendant now asks the Court to amend the terms of his release to permit him to engage in government contracting so that he can continue to receive hundreds of thousands of dollars from the government in return for products without any confirmation of whether such products

match what he has agreed to provide. (Doc. 38). In support, Defendant cites an email from Paul DePriest, a contracting officer in Richmond, who requested a bid for a certain part via email on March 27, 2025. (Doc. 38-2). According to DLA's counsel, Mr. DePriest was new, did not realize that Defendant and Smith and Jamison are suspended, and therefore mistakenly submitted the request for a bid to Defendant. Regardless of the Court' ruling, the United States's understanding is that Mr. DePriest will not be contracting with Smith and Jamison regarding the part discussed in the email.

      The DLA is not like other victims or customers who are victims of fraud. Unlike most victims, DLA cannot simply choose not to do business with Defendant. They may suspend him or his company, but the reasons for and procedures for such suspensions are governed by the Code of Federal Regulations. *See, e.g.,* 48 C.F.R. § 9.407. And even if Defendant is suspended in accordance with federal regulations, as shown by Mr. DePriest's email, a rogue contracting officer may miss that fact and mistakenly seek a bid from Defendant. If DLA takes the most serious possible step, debarring Defendant, such a decision is typically only temporary, opening DLA up to additional harm in the future. (Doc. 31 at 3); 48 C.F.R. § 9.406-4 (period of debarment shall generally not exceed three years). Indeed, here Defendant has been given repeated chances to perform on government contracts, as he has been reinstated twice after being debarred. (*Id.*). In response, Defendant engaged in the scheme to defraud DLA charged in this case. (*Id.*)

      Defendant's company is currently suspended by DLA. As such, the only way that he can engage in government contracting is by attempting to evade the DLA's suspension by doing business through nominee entities or third parties. The Court should not revise the terms of Defendant's supervised release to enable him to evade DLA's suspension. Indeed, Defendant

should not be permitted to engage in government contracting work of any kind while on pretrial release because his doing so presents a danger to the DLA and the military, as laid out in the government's response to Defendant's previous motion to amend the conditions of his release, incorporated by reference herein. (Doc. 27).

The United States asks the Court to deny Defendant's motion in full, because permitting Defendant to engage in defense contracting while on pretrial release endangers the safety of the community. Alternatively, the United States asks the Court to deny Defendant's motion without prejudice to Defendant re-raising the motion should his and/or Smith and Jamison's suspension ever be lifted, so that Defendant is not permitted to evade his suspension by conducting defense contracting through nominee entities or third parties. If the Court is nevertheless inclined to grant Defendant's motion in whole or in part, the United States asks that the Court make clear in its ruling that it takes no position on whether Defendant should be suspended by DLA, since the Court does not have jurisdiction over that determination. In the absence of such a statement, based on Defendant's previous misrepresentations of Court rulings to DLA, Defendant may seek to use the Court's Order as a basis for DLA to withdraw its suspension.

    Respectfully submitted,

    TROY RIVETTI
    Acting United States Attorney

    *s/ William Guappone*
    WILLIAM GUAPPONE
    Assistant U.S. Attorney
    NC ID No. 46075