UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 24-274 |
| DONALD SMITH ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S SURREPLY REGARDING DEFENDANT'S MOTION TO DISMISS**

The United States of America, by and through undersigned counsel, hereby submits this surreply regarding Defendant's Motion to Dismiss (Doc. 55). Defendant's reply brief exclusively discusses an argument never raised in his initial Motion to Dismiss, that the wire fraud counts against him should be dismissed because they are precluded by a 2023 agreement between Defendant and the United States Attorney's Office for the Northern District of Iowa. (Doc. 66). This argument should be rejected by the Court both because it is untimely and because it is substantively meritless.

Defendant is charged with eight counts of wire fraud, in violation of 18 U.S.C. § 1343, and five counts of willfully failing to file tax returns, in violation of 26 U.S.C. § 7203. (Doc. 31). The wire fraud counts relate to Defendant's scheme to defraud with respect to defense contracting that operated from approximately April 2019 through October 2024. (Doc. 31 at 1-6). The specific wires alleged in Counts One through Three relate to bids submitted on behalf of Gold Peak Industries, LLC in 2019 and 2020. (Doc. 31 at 6). The wires alleged in Counts Four through Eight relate to bids submitted on behalf of Smith and Jamison Corporation between May 13, 2023 and January 24, 2024. (Doc. 31 at 6). On August 4, 2025, Defendant filed a motion to dismiss the wire fraud counts of the Superseding Indictment, arguing that he did not ship the products at issue in Counts One through Three, and that he was willing to work with DLA to

1

rectify his provision of nonconforming parts in Counts Four through Eight. (Doc. 55). The government responded in opposition, noting that Defendant's factual contentions, even if true, would not prevent the government from proving every element of the charged offenses, and that any factual disputes should be resolved at trial. (Doc. 57). Defendant filed a reply, ignoring his prior arguments and arguing for the first time that the wire fraud counts are precluded by an agreement he entered into with the United States Attorney's Office for the Northern District of Iowa in January and February 2023. (Doc. 66).

As an initial matter, the Court should reject this new argument because it was not raised in Defendant's motion to dismiss. "Courts need not address arguments raised for the first time in a reply brief." *United States v. Bressi*, No. 4:19-CR-00207-01, 2025 WL 778074, at *12 (M.D. Pa. Mar. 11, 2025) (citing *Williams v. City of Pittsburgh Pub. Sch. Dist.*, 742 F. Supp. 3d 464, 468 n.4 (W.D. Pa. 2024)). Accordingly, the Court can deny Defendant's motion to dismiss without substantively addressing his contention that the settlement agreement Defendant reached precludes the wire fraud charges in the instant Superseding Indictment.[1]

But even if the Court is inclined to consider Defendant's untimely argument, it can still readily deny his motion to dismiss. Defendant's argument appears to be that the government has breached its contract with him, and that the appropriate remedy for the breach of contract is dismissal of the wire fraud charges against him.

The contract at issue is a Stipulation and Settlement Agreement ("the Agreement") entered into in January and February 2023 by Defendant and the United States Attorney's Office for the Northern District of Iowa. (Doc. 66-2 at 1). The very beginning of that stipulation and

---

[1] Defendant cannot complain that he only recently learned of the settlement agreement. He was the one who entered into it, represented by the same attorney who represented him in this matter at the time of the filing of his motion to dismiss. And, in an abundance of caution, the government produced the settlement agreement to Defendant in its first discovery production almost nine months ago.

2

settlement agreement states that it is "In the Matter of" the funds seized from 7 financial accounts in September 2016 and two financial accounts seized in January 2017. (Doc. 66-2 at 1). Specifically, in September 2016, seizure warrants were issued for seven financial accounts, held in the names of Island Distribution and Packaging, Express Manufacturing, Elizabeth Czajkowski, Smith and Jamison Corporation, and Safety and Industrial Manufacturing Corporation. (Exhibit 2). The accompanying affidavits make clear that the seizure warrants were related to an investigation into whether Defendant and Elizabeth Czajkowski sought to defraud the United States with respect to defense contracting from 2009 to 2016. (*See, e.g.,* Exhibit 3). Two additional financial accounts in the name of Elizabeth Czajkowski (together with the original seven, "the Property") were subsequently seized on January 12, 2017. (Doc. 66-2 at 1).

As memorialized by the Agreement, in January 2017, Defendant filed an administrative claim to the Property, and Elizabeth Czajkowski did the same. (Doc. 66-2 at 2). In the Agreement, Defendant agreed to withdraw his administrative claim to the Property, agreed to waive any and all claims he may have relating to the seizure of, or commencement of forfeiture proceedings against, the Property, and agreed to hold certain parties harmless from any and all claims of third parties pertaining to the Property. (Doc. 66 at 2-3). In exchange, "the United States agree[d] to bring no additional action, either civil or criminal against [Defendant] to enforce the action." (Doc. 66-2).

Accordingly, to determine whether the government has breached the Agreement, the Court must determine what "the action" is that the United States agreed not to bring an additional action to enforce. The first step in interpreting a contract under Pennsylvania law is to determine whether the contract is facially clear and unambiguous. *Foster v. Watson*, 2022 WL 3716573, at *4 (W.D. Pa. May 23, 2022). If it is subject to only one reasonable interpretation, the

3

unambiguous contract should be interpreted accordingly. *Id.* If there are reasonable alternative interpretations, the interpretation is left to the factfinder to resolve in light of extrinsic evidence. *Id.*

A plain reading of the Agreement itself makes it clear that it deals with the forfeitability of various seized funds, and the related criminal and/or civil investigation that led to those seizures, i.e. an investigation that led up to 2016 and 2017 seizures. (Doc. 66-2). Indeed, most of the paragraphs specifically reference the Property or the forfeiture thereof. (Doc. 66-2). Common sense and a reading of the Agreement therefore confirms that the Agreement pertains to things that happened no later than 2017, when the last seizure warrant was executed.[2] It is therefore clear and unambiguous that the Agreement, at most, prohibits the United States from bringing an additional action related to the Defendant's scheme to defraud the United States with respect to defense contracting from 2009 to 2016 or 2017.

But the Court need not make such a decisive determination because, whatever the Agreement means, it plainly does not preclude the United States from bringing the wire fraud counts charged in the Superseding Indictment. The charged scheme to defraud occurred from approximately April 2019 through October 8, 2024. (Doc. 31 at 3). That is, it started more than two years after the executed seizures that were at issue in the Agreement. The charged scheme to defraud can be divided into two phases: (1) Defendant's use of third parties to defraud DLA; and (2) Defendant's use of Smith and Jamison to defraud DLA. (Doc. 31 at 3-5). The third parties at

---

[2] Defendant attached to his filing a search warrant signed on September 14, 2016, relating to storage units associated with Defendant. (Doc. 66-1). The underlying affidavit makes it clear that the search was associated with an investigation into whether Defendant and Elizabeth Czajkowski sought to defraud the United States with respect to defense contracting from 2009 to 2016 through the companies Progressive Holdings, LLC, Smith and Jamison Corporation, Express Manufacturing, D&E Fabrication, Island Distribution & Packaging, Safety & Industrial Manufacturing, Rubber Design Products, LLC, Hardware Components, LLC, and Rigging Concepts LLC. (Exhibit 1). Far from supporting Defendant's proposed interpretation of the Agreement, the search warrant and underlying affidavit make clear the chasm between the investigation at issue in the Agreement and the investigation that led to the Superseding Indictment.

4

issue in this case are Gold Peak Industries, LLC, Wolfpack Supply, LLC, Goob Supply, LLC, and DOD Supply, Inc., none of whom were involved in or related to the earlier investigation that was the subject of the Agreement. (Ex. 1, 2, and 3). And Defendant's use of Smith and Jamison to defraud DLA occurred almost entirely after the Agreement was signed, and more than 6 years after the warrants at issue in the Iowa case. By the government's current count, Smith and Jamison entered into approximately 378 contracts that were related to the charged scheme to defraud, with only 18 of those contracts being finalized before the Agreement was fully executed in February of 2023. Indeed, each of the wires charged in Counts Four through Eight occurred after the Agreement was signed. Defendant provides no explanation for how "the action" referenced in the Agreement, which the government agreed not to further enforce, could possibly be understood to refer to things that had not yet happened.[3] Nor can he provide any explanation of how "the action" could refer to companies that were neither the subject of, nor related in any way to, the prior investigation that was the subject of the Agreement.

      Instead, all he can offer in an attempt to get around the clear implication of the Agreement and the search warrant he cited is a bare assertion that the investigation that led to the Superseding Indictment "stemmed from" the 2016 search warrant. (Doc. 66 at 2). That is obviously not true, since the scheme to defraud alleged in the Superseding Indictment occurred years after the search was executed and it is impossible to have investigated in 2016 things that happened from 2019-2023. While the government intends to introduce at trial, as evidence of Defendant's knowledge and intent, that Defendant and his associates were previously debarred from government contracting by DLA, the government does not intend to introduce at trial any

---

[3] The government has not breached the Agreement, and so no remedy is appropriate. However, if somehow the charged scheme to defraud does breach the Agreement, at best for Defendant, the remedy should be an exclusion of evidence relating to the 18 Smith and Jamison contracts entered into before the Agreement was fully executed.

evidence seized in the 2016 search warrants. In other words, the 2016 search warrant, like the Agreement, is irrelevant to this case.

The Agreement plainly does not prohibit the United States from prosecuting Defendant for crimes that occurred after its execution, nor does it prohibit the United States from prosecuting Defendant for crimes that are entirely separate from those that were at issue in that case. Defendant's motion to dismiss should be denied.

    Respectfully submitted,

    TROY RIVETTI
    Acting United States Attorney

    *s/ William Guappone*
    WILLIAM GUAPPONE
    Assistant U.S. Attorney
    NC ID No. 46075