IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCHES OF:          )
                                            )
Premises located at 1000 Heckler Drive,     )     MAGISTRATE NO. 16-
Green Tree (Pittsburgh), PA                 )     UNDER SEAL  **16 . 881M**
                                            )
Storage Units 1101, 1103, and 1104, located at  )   MAGISTRATE NO. 16-
4317 Campbells Run Road, Pittsburg, PA      )     UNDER SEAL

**16 . 882M**

### AFFIDAVIT IN SUPPORT FOR A
### WARRANT TO SEARCH AND SEIZE

I, Todd L. Sikkink, Special Agent with the United States Department of Defense (DoD),

Defense Criminal Investigative Service (DCIS), being first duly sworn, hereby depose and state

as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of

Criminal Procedure for a warrant to search the following premises known as: 1922 Chestnut

Ridge Dr., Robinson, PA; 1000 Heckler Dr., Green Tree, PA; and storage units 1101, 1103, and

1104 located at 4317 Campbells Run Road, Pittsburgh, PA, further described in Attachment A,

for the items described in Attachment B.

2. I have been a Special Agent with the DCIS for approximately fourteen years.  I am

currently assigned to the DCIS, Sioux Falls Post of Duty, SD.  As a Special Agent with the

DCIS, it is my responsibility to detect, investigate and prevent fraud, waste and abuse committed

against or within the DoD, involving DoD programs, operations and assets, and to address other

matters as directed.  Prior to my employment with the DCIS, I was a Special Agent with the

United States Air Force Office of Special Investigations (AFOSI), for approximately four years

1

in various locations. I hold a Bachelor of Arts degree in Criminal Justice from Columbia

College, Columbia, MO. I have received training in criminal investigations through the Federal

Law Enforcement Training Center in Glynco, Georgia and also the AFOSI basic and advanced

investigator courses. During my tenure as a Special Agent, I have investigated numerous cases

and participated in the execution of Federal search warrants, which have resulted in the seizure

of parts, equipment, and documentary evidence of criminal activity.

3. The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set

forth all of my knowledge about this matter. On the basis of this familiarity, I allege:

      a.      There exists probable cause to believe that Donald Smith, Elizabeth

Czajkowski and others known and unknown to law enforcement have committed

violations of 18 U.S.C. § 38(fraud involving aircraft or space vehicle parts), 18 U.S.C. §

287 (false, fictitious or fraudulent claims), 18 U.S.C. § 1343 (fraud by wire), and 18

U.S.C. § 1956 (money laundering).

      b.      Evidence of these violations will be found at the residence located at 1922

Chestnut Ridge Drive, Robinson, PA 15205; the residence located at 1000 Heckler Dr.,

Green Tree, PA; and storage units 1101, 1103, and 1104 located at 4317 Campbells Run

Road, Pittsburgh, PA which locations are further described in Attachment A of this

affidavit.

**TECHNICAL TERMS**

4. The following definitions apply to this affidavit and Attachment B to this affidavit:

a. "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(l), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

b. "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

c. "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

d. "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

e. "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

f. The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service

4

providers control a range of IP addresses. Some computers have static, that is, long-term IP addresses, while other computers have dynamic, that is, frequently changed-IP addresses.

g. The terms "records", "documents", and "correspondence", as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including but not limited to writings, drawings, paintings), photographic form (including but not limited to prints, negatives, slides, videotapes, motion pictures, photocopies, microfilm, microfiche), mechanical form (including but not limited to printing, typing, phonograph records), electrical, electronic, or magnetic form (including but not limited to tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks [DVDs], Blu-Ray disks, Personal Digital Assistants [PDAs], Multi Media Cards [MMCs], memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device). The terms "records", "documents", and "correspondence", as used herein, include but are not limited to letters, envelopes, handwritten notes, diaries, journals, notebooks, address books, manifestos, papers, print-outs, email messages, chat logs, electronic or text messages, mailing lists, invoices, digital data files, or web cache information.

5

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

5.  As described in this affidavit and in Attachment B, this application seeks permission to search for records that might be found at locations described in Attachment A, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

6.  If a computer or storage medium is found on the premises described in Attachment A, there is probable cause to believe the records described in Attachment B will be stored on that computer or storage medium, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten. In

addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media in particular, computers' internal hard drives--contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

7. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium found at the location described in Attachment A because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

7

Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

8. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded

on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

9. *Nature of examination.* Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## PROBABLE CAUSE

10. In summary, the investigation underlying this Application has uncovered a long-running conspiracy and scheme to defraud the United States by Don Smith, Elizabeth Czajkowski, and others. The primary manner and means of this conspiracy involved the targets of the investigation submitting bids on contracts to provide parts to the United States Military. When the targets were the successful bidder, they would then intentionally provide parts that did not conform to the specifications set forth in the contracts, instead providing cheaper, substandard parts that were, for the most part, obtained from China. The targets engaged in this practice even when the contracts specifically required the raw materials or parts to have been obtained in or produced in the United States pursuant to the Buy American Act.

11. The DoD, through its agencies, such as the Defense Logistics Agency (DLA), contracts with private individuals and companies for the supply of various parts needed to

support the United States Military Departments.   All parts so purchased must be in strict conformance with the DoD's stated requirements.   The solicitations and contracts DLA issues include provisions and clauses applicable to the procurements, as required by the Federal Acquisition Regulation (FAR), Defense Federal Acquisition Regulation Supplement (DFARS) and other Federal regulations.   Vendors who contract with the DoD must be registered in the System for Award Management (SAM).   In addition to registering in the SAM, contractors are required to have a Commercial and Government Entity (CAGE) code for identification purposes.

12.   The Defense Supply Center Philadelphia (DSCP) and Defense Supply Center Columbus (DSCC) are buying centers for DLA.   The Government's need for specific parts is identified and solicited under requests for quotation, and only contractors who quote in strict conformance with the stated requirements are eligible for contract award.   Solicitations are posted on the DLA Internet Bid Board System (DIBBS) for searching, viewing, and downloading via the Internet.

13.   When a vendor submits a quote via DIBBS for an "exact product", it does so by completing an online quote form in which it generally confirms it is making an offer to provide the Government the exact product for which it is contracting.   The form explains in detail what "exact product" means.   The Government then considers the submitted quotes and subsequently awards the purchase order to the vendor whose offer represents the best value for the Government.   The purchase order, like the solicitation, provides a very detailed description of the product the Government expects to receive from the awardee vendor.   This process ensures vendors know exactly what is expected of them, and provides them an ability to expressly confirm that they will be delivering product that conforms to all requirements set forth in the

purchase order.

14. This investigation was initiated based upon information received regarding a suspected product substitution involving main landing gear bolts for the C-130 transport aircraft that were supplied by Progressive Holdings, LLC, Rock Valley, IA, (Progressive Holdings) under contract SPM5A0-09-M-0514. The quote for this contract was submitted by Donald Smith who was a contract employee of Progressive Holdings at the time. According to a USAF Systems Safety Evaluation report (SSE), dated February 10, 2010, a metallurgical analysis revealed that the suspect bolts were made of titanium which has a lower ultimate tensile strength and yield strength than the standard cadmium plated steel bolt. It was determined that the required steel bolt is more than 38% stronger than the titanium suspect bolts. A dimensional analysis of the suspect bolts revealed that the head dimensions were smaller resulting in a reduction in bolt head to washer bearing area from the required .386" to only .131". The SSE reports that as a result of their analysis, it was determined that the titanium suspect bolts are substantially weaker than the correct steel tie bolts and have a 100% probability of failure if used on the C-130 wheel assembly.

15. Information was received from the DLA which revealed that a "bid without exception" quote was submitted on March 21, 2009, by Progressive Holdings to provide an "exact product" of 3500 shear bolts, p/n GY1810-60 from an approved manufacturer, SPS Technologies LLC, Jenkintown, PA. The quote was submitted by user name Don Smith, email: militarydepot@hotmail.com. Contract SPM5A0-09-M-0514 was subsequently awarded to Progressive Holdings to provide 3500 bolts, P/N GY1810-60, "bid without exception", "exact

product" for $96,145.00; SPS Technologies was included on the contract as an acceptable source.

    16.  On July 29, 2011, email communications from militarydepot@hotmail.com and lori.647@hotmail.com were received from Microsoft Corporation pursuant to a search warrant.  Email correspondence between Scott Eppinga, former owner of Progressive Holdings, and Donald Smith was received.  A review of email communication revealed that Donald Smith coordinated with foreign suppliers to purchase items which were subsequently provided to the Department of Defense in violation of contract requirements.   An example included correspondence in August 2009 between Donald Smith (militarydepot@hotmail.com) and Mike (info@titanium-cn.com) in which they discussed pricing for 3,675 bolts in the following correspondence:

 "Mike,
I have an order for 3675 ea. of these bolts but our customer has a request.
The request is they want me to supply them, when I deliver the bolts, a
material manufacturing data sheet stating that the bolts were manufactured
to the drawing specifications P/N GY1810-60 and the manufacturing data must
come from a company in the USA or Canada. So my question is, do you have a
representative or dealer in the USA or Canada that can supply the material
manufacturing data sheet on their company letterhead?
Thanks,
Don"

An email reply is sent from Mike:

"Don,
I'd like to attach the new invoice for you.
Is the drawing which I sent to you Ok? We mainly produce the bolts according
to the sample. I am discussing the material data sheet with the USA company.
Best regards,
Mike"

Attached to the email is an invoice from XianUltra Titan Import & Export, R1006, Heizee International, No. 219 North Xing Qing Rd., 710032, Xi'an, China, which is dated August 12, 2009 for 3675 Titanium grade5bolt, As sample and drawing No. P/N GY1810-60, for $22,233.75. The Port of Shipment is Main Chinese Airport.

17. An additional email was sent from Donald Smith to Mike regarding the paperwork for the bolts which included the following: "I reviewed the paperwork the certificate needs to read somewhere that it is the bolt was made I/A/W DWG NR 73842 5D4-306." Mike replies to Donald Smith on August 19, 2009, that "As you know, we just used the materials from the USA company, they didn't produce the bolts. In the USA, if anything bad happens with a product, everyone involved ends up in a lawsuit even if it was not their fault! Even if your company over-torques his bolts and someone gets hurt, the company on the letterhead could get sued. Hope you understand the situation and know how to deal with it."

18. Angela Marin (Marin), Contracting Specialist, DSCP, was contacted regarding contract SPM5A0-09-M-0514. Marin related that she sent an email to Progressive Holdings, email address militarydepot@hotmail.com, on February 5, 2010, requesting product verification testing results. On that same day, Marin received an email response from Lori Smith, email address lori.647@hotmail.com, with the requested certification documents attached. A review of the certification documents revealed testing and traceability certification on letterhead from TIMET, Titanium Metals Corporation, 5430 LBJ Freeway, Suite 1700, Dallas, TX which certified the parts were made in accordance with Drawing NR 73842 5DR-306.

19. On January 14, 2011, Clarence Brown (Brown), Associate General Counsel,

Contran Corporation, Dallas, TX, was interviewed. Brown related that TIMET is owned by Contran Corporation and advised that the TIMET location in Dallas, TX, is their corporate office. Brown was shown copies of the certification documents that were provided to DCMA by Lori Smith. Brown related the documents were not legitimate and did not originate from TIMET; he explained that TIMET does not provide any finished product, only raw material and they do not do any type of testing other than for the chemical composition of their titanium.

20. As the investigation progressed, numerous other contracts involving Don Smith, Lori Smith, and Progressive Holdings were found to have been part of the same or similar conspiracy and scheme to defraud.

21. On May 5, 2014, information was received from DLA that Donald Smith was the owner of Smith & Jamison Corporation (Smith & Jamison) which established a CAGE code on January 10, 2014; the physical address for Smith & Jamison was listed as 1308 Main Street, Burgettstown, PA. Additional information from DLA revealed the following: On February 20, 2014, a quote was submitted through DIBBS from Smith & Jamison for 2700 electrical clips, made in accordance with military specification MIL-DTL-83413/7E(1), for $105,165.00. The specifications set forth in MIL-DTL-83413/7E(1) required, among other things, that the parts be manufactured with stainless steel. Smith & Jamison is listed as the manufacturer of the item with the vendor address listed as 1308 Main St, Burgettstown, PA 15021-1091. The quote is "bid without exception" and the contact information provided for quoter Donald Smith was listed as: email- smith.jamisoncorporation@gmail.com; phone- (412) 489-2025.

22. On February 25, 2014, Contract Specialist Babette Robinson, DSCC, sent an email to Donald Smith using email address smith.jamisoncorporation@gmail.com to request traceability

for this item.  An email reply was received with a letter attached from Smith & Jamison that was signed by Donald Smith which stated that this item would be manufactured by Smith & Jamison in accordance with basic spec NR MIL-DTL-83413/7E(1) Revision NR E DTD 06/17/2013 part piece number: M83413/7-1A.

23.  On February 26, 2014, Supervisory Contracting Officer William J. West, DSCC, sent an email to Donald Smith at smith.jamisoncorporation@gmail.com to verify their conversation that Smith & Jamison would be manufacturing the parts using the required stainless steel.  West received an email reply from Donald Smith confirming that Smith & Jamison would be manufacturing this item per specification M83413/7-1A.

24.  William West was interviewed on August 21, 2014, regarding his telephone conversation with Donald Smith.  West said he had contacted Donald Smith at (412) 489-2025 to confirm the parts would be made in accordance with contract requirements and would be making the 29 day delivery date.  West specifically advised Smith that stainless steel was a difficult material to work with and he wanted to confirm that Smith & Jamison would be able to provide the correct parts.  According to West, Smith assured him that Smith & Jamison would be manufacturing this item, and that stainless steel would be used.  Smith also confirmed that his company could produce the correct product within the 29 day time frame.

25.  On February 27, 2014, contract SPE7M9-14-M-1519 was awarded to Smith & Jamison to provide 2700 electrical clips, NSN 5999-01-605-8107, for $105,165.00.  The contract was signed by Donald Smith, Owner, Smith & Jamison.

26. Email communication was received from Google pursuant to a search warrant on June 9, 2015, which revealed the following excerpts of email correspondence in March and April

17

2014, between email account island.dist.pkg.inc@gmail.com and jxhztoolterry@gmail.com:

> *"Dear Smith*
> *Good day*
> *Glad to received your kind reply on Alibaba.*
> *Pls show me your drawing here,i will check and quote you soon.*
> *Looking forward to hearing from you soon.*
> *So thanks*
>
> *Best regards*
> *Terry*
> *Jiaxing Hongzhi Toolmaking co.,ltd*
> *Address: No.8 XinggangEast Road,Youche Gang,Xiuzhou District,Jiaxing*
> *Website: http://www.jxhztool.com <http://www.jxhztool.com>*
> *http://jxhongzhi.en.alibaba.com <http://jxhongzhi.en.alibaba.com/>*
> *Email:    jxhztoolterry@gmail.com <mailto:jxhztoolterry@gmail.com>*
> *Phone:    86-0573-82235528*
> *Fax:      86-0573-82230358*
> *Tel:      13616835745*
> *Skype:    jxhztoolterry"*

> *"Terry,*
> *Attached is the drawing and we need 2700 ea. If you have something close to this*
> *drawing and off of the shelf thst will work. The drawing is in inches.*
> *If you can supply, please advise price and leadtime.*
> *Thank you,*
> *Don"*

> *"Dear*
> *Could you tell me the surface treatment?*
> *And if you have the pictures of the clamp?Show me for reference.*
> *Best regards*
> *Terry"*

> *"Terry,*
> *There is no surface treatment for the clamp.*
> *We don't have pictures.*
> *We are looking for something that is close to this drawing and off of the shelf if possible.*

*Don"*

*"Terry,*
*The point of ex works is that you do not have to pay any delivery fee, we will pay all fees*
*plus all shipping. You just put the items in boxes and we handle everything else. As far as*
*the Tax Refund I've never heard of that but I want to work with you to get this order*
*placed. Regardless of the total quantity and price that we agree on we need 2700 pcs air*
*freighted to us as quickly as possible and the remaining quantity can ship by sea. So can*
*you supply 20,000 pcs at USD0.19/pc with no pvc and no copper coating along with the*
*USD700.00 mold fee or a total of USD4500.00. If so please issue a PI including your*
*bank information including your bank address so that 100% of the funds reach you*
*quickly.*
*Don"*

27. On May 13, 2014, a product review was completed by DLA on the electrical clips received from Smith & Jamison under contract SPE7M9-14-M-1519. The review revealed that product failed testing for multiple issues to include incorrect dimensional characteristics, not fabricated with stainless steel, and missing required set screws. One item was also tested to determine if it would meet salt spray requirements and subsequently failed due to being fabricated with unapproved 1005 carbon steel. According to the review, all assets received were determined to be unacceptable for use for their intended function and remain suspended from use.

28. On August 1, 2014, a pre-award survey was attempted by the Defense Contract Management Agency for Smith & Jamison Corporation for solicitation SPE7L5-14-X-0004. According to the survey, multiple attempts to contact Donald Smith via email and telephone were unsuccessful, and an internet search of the corporate address of 1308 Main Street, Burgettstown, PA, revealed a condominium or retail complex with the street view showing a Beauty Salon/Hairdresser.

29. According to information received from Google, email account

19

smith.jamisoncorporation@gmail.com was created on November 22, 2013, by Donald Smith

from IP address 108.39.208.104.  A review of information received from Verizon revealed this

IP address had been assigned to customer Elizabeth Czajkowski, **1922 Chestnut Ridge Drive,**

**Robinson, PA 15205**, email: defabricationinc@gmail.com.  Financial information obtained

pursuant to a grand jury subpoena for accounts held by Donald Smith confirmed a financial

relationship with Elizabeth Czajkowski and two of her companies, Express Manufacturing and

D&E Fabrication.

30.  On November 19, 2014, financial information was received pertaining to Minnwest

bank account 1080009531 held by Island Distribution & Packaging, Inc; Donald Smith signed as

the only authorized individual for this account as of July 17, 2013.   A review of this information

revealed multiple wire transfers to foreign manufacturers.  Donald Smith used email accounts

militarydepot@hotmail.com and island.dist.pkg.inc@gmail.com to correspond with Minnwest

bank when he provided instructions to send funds to foreign manufacturers.  A review of Donald

Smith's correspondence with Minnwest Bank revealed that invoices for the purchase of items

from foreign manufacturers were included.  On May 16, 2014, funds in the amount of $7,022.40

were wired from the Minnwest account held by Island Distribution & Packaging, Inc, to

Zhengzhou Yafei Cable Co.; a review of the wire information revealed an invoice from

Dingxiang Shijing Flange Co., (beneficiary Zhengzhou Yafei Cable Co.), Zhohgyuan District,

China, for 1,463 gate valves for $23,408; the gate valves were described on the invoice as 2"

with a color of close desert tan.  According to the invoice payment terms, 30% advance payment

was $7,022.40.  The invoice sent to Minnwest Bank appeared to be consistent with what a screen

shot from a cell phone or mobile device would look like.

31. A "bid without exception" quote was submitted by Express Manufacturing for 1,463 gate valves on April 21, 2014. The submitted quote indicates domestic end products and Express Manufacturing as the manufacturer. The quoter's name was listed as Olivia Johnson, email: expressmanufacturingcompany@gmail.com. On May 8, 2014, contract SPE7M3-14-V-4816 was awarded to Express Manufacturing Corporation, 1150 First Ave. Suite 511, King of Prussia, PA, for 1,463 gate valves, 2", color: Carc Desert Tan for $84,634.55; the Buy American Act is required by this contract. (The Buy American Act and Balance of Payments Program (BAABOP) requires the vendor receiving the award, whether a dealer or manufacturer to provide a "domestic end product." A domestic end product is (i) An unmanufactured end product that has been mined or produced in the United States; or (ii) An end product manufactured in the United States if (A) The cost of its qualifying country components and its components that are mined, produced, or manufactured in the United States exceeds 50 percent of the cost of all its components.)

32. A Bill of Lading received from Pittsburgh Fayette Express revealed a Bill of Lading for a shipment picked up from Express Manufacturing Company, c/o StoreXpress Unit 31027, **4317 Campbells Run Road, Pittsburgh, PA 15205** under customer order number SPE7M3-14-V-4816 for 1,463 Gate Valve Assemblies to be delivered to DLA Distribution, 25600 Chrisman Road, Tracy, CA. The shipper signed on August 21, 2014:

Shipper Signature/Date

8/21/14

"This is to certify that the above named materials are properly classified, packaged, marked, and labeled, and are in proper condition for transportation according to the applicable regulations of the DOT.

33.. This signature appears to be similar to the following signature from Elizabeth Czajkowski's Business Signature Card for Citizens Bank.



ELIZABETH A CZAJKOWSKI - Individual Owner

34. It is believed, based upon surveillance and payments from accounts controlled by Elizabeth Czajkowski, that Don Smith and Elizabeth Czajkowski rented units 1101, 1103 and 1104 from StoreXpress located at **4317 Campbells Run Road, Pittsburgh, PA 15205.**

35. On November 17, 2014, a product review conducted by the DLA Land and Maritime Product Verification Division reported that the product supplied by Express Manufacturing under contract SPE7M3-14-V-4816 failed to meet multiple requirements and would not meet operational use as intended and remain suspended from use. According to the evaluation, the items tested revealed some of the failures to include: the hand wheel did not turn due to rust present; no visible evidence of anti-seize tape being applied; valve body fabricated with carbon steel rather than the required bronze.

36. On January 14, 2016, SA Kishara Gant, DCIS Philadelphia Resident Agency, visited the address provided by Express Manufacturing, 1150 First Ave, Suite 511, King of Prussia, PA, which was determined to be an office building called Parkview Tower. SA Gant reviewed the building directory and did not see a listing for Express Manufacturing or any company associated with Suite 511. SA Gant went to the 5th floor and observed that only suites 501 and 502 were occupied and she did not see a door that indicated a Suite 511. The companies that fell under Suite 501 appeared to share the same reception desk. When questioned, the receptionist was

unfamiliar with Express Manufacturing.  Suite 502 was occupied by the Air Force Health

Professions Recruiting office.  SA Gant related this building contained normal office space and

did not appear to occupy a manufacturing facility.

     37.  By certified letter dated December 11, 2014, Elizabeth Czajkowski was notified that

she was proposed for debarment by the DLA from procurement and sales contracting with the

Federal Government.  A Notice of Debarment was issued on February 17, 2015 in which

Elizabeth Czajkowski received a three year debarment.

     38.  On April 17, 2015, Don Smith and Elizabeth Czajkowski were observed through a

video recording device painting over markings on crates which appeared to read "Made in

China" at the storage facility located at **4317 Campbells Run Road, Pittsburgh, PA**; thirteen of

these crates were subsequently shrink wrapped on three pallets.  On April 20, 2015, Elizabeth

Czajkowski was observed loading containers on a Pittsburgh Fayette Express (PFX) truck

including three shrink wrapped pallets containing thirteen crates.  Information was subsequently

obtained from PFX which revealed that four pallets were received for delivery from **4317**

**Campbells Run Road, Pittsburgh, PA** for Safety & Industrial Manufacturing.  Three pallets

were identified under contract SPE4A4-15-V-5680 to be delivered to DLA, New Cumberland,

PA, and one pallet was identified under SPE7M0-15-4117 to be delivered to DLA Distribution

Red River, 10th Street and K Avenue, Texarkana, TX

     39.  A review of the quote for contract SPE4A4-15-V-5680 revealed a "bid without

exception" quote submitted by Safety & Industrial Manufacturing for 13 weighing scales on

December 26, 2014.  The submitted quote indicates domestic end products and Safety &

Industrial Manufacturing as the manufacturer with an address of 109 E 17th Street, Cheyenne,

WY. The quoter's name was listed as Jamie Miller, email: safetyandindustrialmfg@gmail.com. On January 6, 2015, contract SPE4A4-15-V-5680 was awarded to Safety & Industrial Manufacturing, 109 E 17th Street, Cheyenne, WY, for 13 weighing scales for $13,544.57 to conform with specification AAA-S-118D, Type III, Style 3, 300lb capacity scale; the Buy American Act is required by this contract.

40. On April 24, 2015, thirteen scales were delivered to DLA Aviation, New Cumberland, PA. An initial review of the scales reveled that specifications of the scale were not the same as required by the contract. An operational instruction document included with the scales indicated the model number as 19333 and it was distributed by Northern Tool & Equipment Company. DLA subsequently made contact with Northern Tool & Equipment through an online chat and confirmed that the scale (item number 19333) was made in China.

41. A review of the quote for contract SPE7M0-15-4117 revealed a "bid without exception" quote submitted by Safety & Industrial Manufacturing for 513 nonmetallic hoses on December 26, 2014. The submitted quote indicates domestic end products and Safety & Industrial Manufacturing as the manufacturer with a listed address of 109 E 17th Street, Cheyenne, WY. The quoter's name was listed as Jamie Miller, email: safetyandindustrialmfg@gmail.com. On December 31, 2014, contract SPE7M0-15-4117 was awarded to Safety & Industrial Manufacturing for 513 nonmetallic hoses in accordance with Basic Drawing NR 19207 12414553 DTD 6/18/2008, Part Piece number: 12414553-006; the Buy American Act is required by this contract.

42. A Product review was subsequently conducted by DLA on items received by Safety & Industrial Manufacturing under contract SPE7M0-15-4117 which revealed the hoses failed to

meet drawing and specification requirements and it's "origination and fabrication is highly questionable", the hose remains suspended from use. According to DLA, these items are used within the coolant systems of Medium Tactical Vehicles.

43. On April 6, 2015, information was received from Phil Williamson, Quality Assurance Specialist, Defense Contract Management Agency, who related that both addresses used by Safety & Industrial Manufacturing (1621 Central Ave, Cheyenne, WY and 109 E 17th St, Cheyenne, WY) are essentially the same location called 17th & Central Executive Suites; one address is for the front entrance and the other address is the back door. Williamson asked the receptionist about Safety & Industrial and Jamie Miller but the receptionist did not recognize either one. Williamson attempted to contact Jamie Miller at (307) 633-9102 and left a message identifying who he was and requesting a return call. Williamson never received a return call.

44. By certified letter dated June 30, 2015, Don Smith was notified that he was proposed for debarment by the DLA from Government procurement, nonprocurement and sales programs. A Notice of Debarment was issued on August 12, 2015 in which Don Smith received a three year debarment.

45. On January 27, 2016, Don Smith and Elizabeth Czajkowski were observed at Store Express, **4317 Campbells Run Road, Pittsburgh, PA** through a video recording device removing the packaging on two pallets of what appeared to be black rubber mats, they were observed placing adhesive labels on the mats and placing them on four separate pallets before they placed straps and shrink wrapped the loaded pallets. On January 28, 2016, Elizabeth Czajkowski was observed through a video recording device at approximately 1:00 P.M. loading 4 shrink wrapped pallets with a forklift on the back of a truck.

46. Shipping information subsequently obtained from Pittsburgh Fayette Express (PFX), confirmed PFX picked up 4 pallets at **4317 Campbells Run Road, Pittsburgh, PA**, on January 28, 2016 for shipment by Rubber Design Products, LLC, P.O. Box 15774, Pittsburgh, PA, to DLA Distribution, Tracy, CA, which indicated SPE8ES-16-V-0246 on the Bill of Lading. The shipper signature appears as below:



47. The company point of contact provided to the Government for Rubber Design Products, LLC, 2389 Main St, Glastonbury CT is Michelle Smith, msmith.rdp@gmail.com. This email account, msmith.rdp@gmail.com, was created on January 8, 2015 using IP 108.39.208.104 address with a listed subscriber name of Michelle Smith; this IP address (108.39.208.104) was assigned to Verizon subscriber Elizabeth Czajkowski, **1922 Chestnut Ridge Dr., Robinson, PA** from November 7, 2013 to March 12, 2015. The bank account provided to the Government was Citizens Bank account # 6301103681. This account is held in the name of Safety & Industrial Manufacturing Corporation, 45 Briola Lane, Ambridge, PA; Elizabeth Czajkowski is the authorized signer for the account.

48. On February 29, 2016, Don Smith and Elizabeth Czajkowski were observed through a video recording device repackaging items on a pallet at Store Express, **4317 Campbells Run Road, Pittsburgh, PA**; they subsequently shrink wrapped the loaded pallet. On March 1, 2016, Don Smith and Elizabeth Czajkowski were observed through a video recording device to be

placing adhesive labels from a manilla folder that Czajkowski brought with her. Elizabeth Czajkowski was observed at approximately 11:56 A.M. loading two shrink wrapped pallets with a forklift on a truck labeled PFX.

49. Shipping information subsequently obtained from PFX, confirmed PFX picked up 2 pallets at **4317 Campbells Run Road, Pittsburgh, PA**, on March 1, 2016 for shipment by Hardware Components, LLC, P.O. Box 15774, Pittsburgh, PA, to DLA Distribution, Tracy, CA which indicated SPE5El-16-V-0147 on the Bill of Lading. The shipper signature appears as below:

**Shipper Signature/Date**      3/1/16

This is to certify that the above named materials are properly classified, packaged, marked, and labeled, and are in proper condition for transportation according to the applicable regulations of the DOT.

50. The company point of contact provided to the Government for Hardware Components, 1942 Broadway St, Boulder, CO was Tammy Williams, tammy.hardware@gmail.com. This email account, tammy.hardware@gmail.com, was created on January 8, 2015 using IP address 108.39.208.104 with a listed subscriber name of Tammy Williams; this IP address (108.39.208.104) was assigned to Verizon subscriber Elizabeth Czajkowski, **1922 Chestnut Ridge Dr., Robinson, PA**. The bank account provided to the Government was Citizens Bank account # 6301103681. This account is held in the name of Safety & Industrial Manufacturing Corporation, 45 Briola Lane, Ambridge, PA; Elizabeth Czajkowski is the authorized signer for the account.

51. On February 24, 2016, an Air Force memorandum was submitted as notification to screen all stock for deficient material supplied by Rigging Concepts LLC under contract number

SPE5E4-15-V-5601 and purge.  According to the notification, the deficient items are washers used as wear washers in the F-16 aircraft flight control surface actuators which are made of the wrong material and are also dimensionally non-conforming.  These washers, if installed in the aircraft, could lead to aircraft control issues in flight.

52.  The non-conforming washer was discovered by F-16 technicians deployed with the U.S. Air Forces Central Command (AFCENT) in the Middle East Region when they were conducting scheduled aircraft maintenance and attempted to install new flight control wear washers.  The technicians noticed the washers appeared to be the wrong color and dimension when they opened the washer packaging. Kevin Schabacker, Lead Engineer, F-16 System Program Office, explained the engineering specifications required the washers to be constructed out of beryllium copper; however, the washers the deployed F-16 technicians received were made out of steel.

53.  A review of the quote for contract SPE5E4-15-V-5601 revealed a "bid without exception" quote submitted by Rigging Concepts LLC, 4000 Eagle Pt Corporate Dr, Birmingham, AL, for 1584 washers (NSN 5310011759192) on March 31, 2015.  The quoter's name was listed as Sue Watkins, email: riggingconcepts@gmail.com.  On April 21, 2015, contract SPE5E4-15-V-5601 was awarded to Rigging Concepts, 4000 Eagle Pt Corporate Dr, Birmingham, AL for 1,584 washers, NSN 5310011759192, in accordance with required drawings. A review of information received from Google revealed an email was sent on April 30, 2015 from Don (island.dist.pkg.inc@gmail.com) to Doris Tang, Dingxiang Shijing Flange Co., Ltd, (doris@gshvalve.com) regarding the purchase of 1,584 washers :

"*Doris,*

*Back on May 28, 2014 you issued a PI (PI NO.: TJ2-0528) for 1860 ea. flat washer, od:71mm, id:41mm. at a price of 13 cents each. We need to purchase the same flat washer but the quantity this time is 1584 ea. We also want you to ship the flat washers by DHL or FedX and to also include the PayPal cost on the PI. So when you can please issue a PI and include the PayPal email account and we will immediately make payment. Thank you,*

*Don"*

A review of information received from Google Gmail and Verizon revealed riggingconcepts@gmail.com account was created on January 8, 2015 using IP address 108.39.208.104 with a listed subscriber name of Sue Watkins. This IP address (108.39.208.104) was assigned to Verizon subscriber Elizabeth Czajkowski, **1922 Chestnut Ridge Dr., Robinson, PA** from November 7, 2013 to March 12, 2015.

54. On January 15, 2016, Don Smith and Elizabeth Czajkowski were observed through video surveillance at STORExpress Storage Facility, **4317 Campbells Run Road, Pittsburgh, PA**. Don Smith and Elizabeth Czajkowski were observed removing approximately 24 boxes which were stacked in unit 1104 and load them into the back of a Red Subaru Forester. The boxes appeared to be marked with "SATCO" and other markings on the side and were sealed shut with packaging tape. At approximately 11:50 A.M., they were observed to leave the facility driving the Subaru.

55. Surveillance revealed that Don Smith and Elizabeth Czajkowski arrived at **1922 Chestnut Ridge Dr., Pittsburgh, PA** at approximately 12:02 P.M. driving the Subaru Forester. Upon exiting the vehicle, Don Smith was observed carrying a stack of what appeared to be

"white papers" from the vehicle into **apartment 1922**. The Red Subaru Forseter was observed to still be filled with what appeared to be shipping boxes. At approximately 1:15 P.M., Elizabeth Czajkowski was observed to leave the apartment complex in the Red Subaru Forester. At approximately 2:50 P.M., Elizabeth Czajkowski was observed to arrive at **1000 Heckler Drive, Green Tree, PA**, in the Red Subaru Forester, still containing the above referenced shipping boxes. Elizabeth Czajkowski backed the vehicle in the driveway close to the garage door and was observed to unload what appeared to be all the boxes that were in the back of the vehicle which included the boxes initially loaded at STORExpress.

56.  On May 18, 2016, information was received from DLA regarding testing completed on items provided by companies associated with Smith and/or Czajkowski. A review of the information revealed the following failure rate for tested items for the following companies: Rigging Concepts-100% failure rate; Flow Industries-100% failure rate; Safety and Industrial-93% failure rate; D&E Fabrication-100% failure rate; Smith and Jamison-80% failure rate; Island Distribtuion-67% failure rate; Express Manufacturing-100%; M&B Enterprise-100% failure rate; and Specialty Manufacturing-100% failure rate.

57.  On February 24, 2016, information was received from Verizon pursuant to a grand jury subpoena which revealed the Verizon account associated with address **1922 Chestnut Ridge Dr., Robinson, PA**, is registered to subscriber Elizabeth Czajkowski, email - defabricationinc@gmail.com. A review of this information revealed that IP address 108.39.208.104 was assigned to this account from November 7, 2013 to March 12, 2015. This IP address, 108.39.208.104, was used to create the following email accounts:

-safetyandindustrialmfg@gmail.com account created on January 31, 2014 with a listed

subscriber name of Jamie Miller. This email address was submitted to the Government as contact information for the company Safety & Industrial Manufacturing Corp, 109 E 17th St, Cheyenne, WY.

-electricalcomponents.jackie@gmail.com account created on January 8, 2015 with a listed subscriber name of Jackie Collins. This email address was submitted to the Government as contact information for the company Electrical Manufacturing LLC, 701 South St Mountain Home, AR.

-islanddistandpkg@gmail.com account created on August 22, 2014 with a listed subscriber name of Steven Davis. This email address was submitted to the Government as contact information for the company Island Distribution & Packaging Inc., 2952 Neville Road, Pittsburgh, PA.

-lori.llstech@gmail.com account created on November 5, 2014 with a listed subscriber name of Lori Smith. This email address was submitted to the Government as contact information for the company LLS Technology Inc., 318 Boggs Ave, Pittsburgh, PA.

-mary.flowindustries@gmail.com account created on January 8, 2015 with a listed subscriber name of Mary Stevens. This email address was submitted to the Government as contact information for the company Flow Industries LLC, 1846 E Innovation Park Dr, Oro Valley, AZ.

-mbcorppa@gmail.com account created on August 7, 2014 with a listed subscriber name of Sam Williams. This email address was submitted to the Government as contact information for the company M&B Enterprise Inc., 1150 First Ave, King of Prussia, PA.

-msmith.rdp@gmail.com account created on January 8, 2015 with a listed subscriber

name of Michelle Smith.  This email address was submitted to the Government as contact

information for the company Rubber Design Products LLC, 2389 Main St, Glastonbury,

CT.

-riggingconcepts@gmail.com account created on January 8, 2015 with a listed subscriber

name of Sue Watkins.  This email address was submitted to the Government as contact

information for the company Rigging Concepts LLC, 4000 Eagle Pt Corporate Dr,

Birmingham, AL.

-tammy.hardware@gmail.com account created on January 8, 2015 with a listed

subscriber name of Tammy Williams.  This email address was submitted to the

Government as contact information for the company Hardware Components LLC, 1942

Broadway St., Boulder, CO.

-techgrouppa@gmail.com account created on September 8, 2014 with a listed subscriber

name of Tina Johnson.  This email address was submitted to the Government as contact

information for the company Technologies Group Inc., 90 Center Ave, Burgettstown, PA.

58.  On March 11, 2016, information was received from Comcast Communications

pursuant to a Grand Jury subpoena which revealed the Comcast account associated with address

**1922 Chestnut Ridge Dr., Robinson, PA**, is registered to subscriber Elizabeth Czajkowski.  IP

addresses 71.60.235.13 and 23.70.113.238 were assigned to this account from August 23, 2015

to February 19, 2016.  Information received from Google pursuant to a grand jury subpoena

revealed IP address 71.60.235.13 was used on numerous occasions to access email account

island.dist.pkg.inc@gmail.com.

59.  Additional information provided by Verizon revealed an account associated with

32

address **1000 Heckler Dr., Green Tree, PA**, registered to subscriber Elizabeth Czajkowski. IP address 74.98.215.40 was assigned to this account from February 5, 2015 to April 14, 2015. This IP address, 74.98.215.40, was used on numerous occasions to access the Government SAM account for Hardware Components with the name listed as Tammy Williams. This IP address was also used to access the following email accounts on numerous occasions: defabricationinc@gmail.com; islanddistpkginc@gmail.com; expressmanufacturingcompany@gmail.com; safetyandindustrialmfg@gmail.com; and smithjamisoncorporation@gmail.com.

60. IP address 71.112.212.105 was assigned to the Verizon account registered to subscriber Elizabeth Czajkowski at address **1000 Heckler Dr., Green Tree, PA**, from October 20, 2014 to February 5, 2015. This IP address, 71.112.212.105, was used to access the following email accounts on numerous occasions: defabricationinc@gmail.com; islanddistpkginc@gmail.com; expressmanufacturingcompany@gmail.com; safetyandindustrialmfg@gmail.com; and smithjamisoncorporation@gmail.com.

61. IP address 108.32.41.167 was assigned to the Verizon account registered to subscriber Elizabeth Czajkowski at address **1000 Heckler Dr., Green Tree, PA**, from October 17, 2014 to October 20, 2014. This IP address, 108.32.41.167, was used to access the following email accounts on numerous occasions: defabricationinc@gmail.com; expressmanufacturingcompany@gmail.com; and islanddistpkginc@gmail.com.

62. Information was received regarding another Verizon account associated with address **1000 Heckler Dr., Green Tree, PA**, registered to Elizabeth Czajkowski. IP address 71.112.212.209 was assigned to this account from September 16, 2015 through February 5,

2016. This IP address, 71.112.212.209, was used on numerous occasions to access the

Government SAM account for Lighting Structures LLC, 1900 Northwest Blvd, Coeur d Alene,

ID, with the name listed as Sara Lee. This IP address was also used to access the following

email accounts on numerous occasions: techgrouppa@gmail.com; tammy.hardware@gmail.com;

safetyandindustrialmfg@gmail.com; riggingconcepts@gmail.com; msmith.rdp@gmail.com;

mbcorppa@gmail.com; mary.flowindustries@gmail.com; islanddistpkginc@gmail.com; and

electricalcomponents.jackie@gmail.com.

    63. Additional information was received from PFX on August 4, 2016 which revealed

that items were recently picked up by PFX at StoreXpress, 4317 Cambpells Run Road,

Pittsburgh, PA, and shipped to the Defense Logistics Agency (DLA) by Hardware Components,

Flow Industries, Rigging Concepts, and Unique Tape Manufacturing, LLC. A review of the

shipping documents revealed the shipper signature below for a shipment from Unique Tape

Manufacturing to DLA under PO# SPE7MO-16-V-9473.

Shipper Signature/Date

This is to certify that the above named materials are properly
classified, packaged, marked, and labeled, and are in proper
condition for transportation according to the applicable
regulations of the DOT.

    64. A review of the System for Award Management revealed a CAGE code of 7K4H5

assigned to Unique Tape Manufacturing and a physical address listed for the company as 117

Broadway St, Chesterton, IN 46304. The company point of contact is listed as Terri Smith, 117

Broadway St, Chesterton, IN, and a phone number of: (219) 617-4204.

34

65.  On August 19, 2016, copies of Indiana Secretary of State documents were reviewed which revealed Unique Tape Manufacturing LLC was registered in the State of Indiana on October 6, 2015.  The registered office and agent was listed as: Registered Agents Inc., 117 Broadway Suite 100, Chesterton, IN.  Open source research of Google Maps revealed 117 Broadway, Chesterton, IN, as the Hiestand law office.  There were no indications of a business named Unique Tape Manufacturing at this location.

66.  Through a review of records and observation, it has been confirmed that Don Smith and Elizabeth Czajkowski received shipments at **STORExpress Storage Facility, 4317 Campbells Run Road, Pittsburgh, PA,** repackaged these items using storage units **1101, 1103,** and **1104,** and subsequently sent the items to the Defense Logistics Agency.  Elizabeth Czajkowski has been observed arriving and leaving the storage facility with what appear to be manila folders.  Don Smith and Elizabeth Czajkowski have been observed taking what appear to be computer printed adhesive labels from the manila folders and placing these labels on the repackaged items.  A review of Bill of Lading and Proof of Shipments obtained from Pittsburgh Fayette Express confirmed that shipments were picked up at 4317 Campbells Run Road for delivery to the Defense Logistics Agency under multiple companies previously identified.  Don Smith and Elizabeth Czajkowski have been observed at apartment 1922 of the Chestnut Ridge apartment complex, **1922 Chestnut Ridge Dr, Robinson**, PA,  before and after they have been observed repackaging items at the storage facility on Campbells Run Road.  According to subpoenaed bank records from Dollar Bank, rent payment has been made to Chestnut Ridge Apartments from the D&E Fabrication account and signed by Elizabeth Czajkowski; the memo line on the check indicates 1922 rent and 2 car ports.

67. Elizabeth Czajkowski has been observed transporting boxed items from the storage facility located at **4317 Campbells Run Road, Pittsburgh, PA** to the residence located at **1000 Heckler Dr., Green Tree, PA** and unloading those items through the garage. Elizabeth Czajkowski listed the address of **1000 Heckler Dr., Green Tree, PA,** as the corporate address for a company called EAC Sales LLC, which was incorporated in Pennsylvania in November 2014; the articles of incorporation were signed by Elizabeth Czajkowski. According to the U.S. Postal Service, mail addressed to D&E Fabrication, and EAC Sales was received at **1000 Heckler Dr., Green Tree, PA.**

68. Elizabeth Czajkowski has been observed through video surveillance using her cell phone while repackaging items at the STORExpress storage facility. The IP address associated with Czajkowski's Verizon account has also been used to access company email accounts and also Government SAM accounts.

69. A review of information provided by Minnwest Bank included Don Smith's correspondence to Minnwest with instructions for wire transfers to foreign manufacturers which revealed multiple invoices which appeared to be consistent with what a screen shot from a cell phone or mobile device would look like.

## **CONCLUSION**

63. Based on the aforementioned information, your affiant respectfully submits that this affidavit supports probable cause for a warrant to search the locations described in Attachment A and seize the items described in Attachment B.

Respectfully submitted,

Todd L. Sikkink
Special Agent
DOD/DCIS

Subscribed and sworn to before me
on September 14, 2016:

ROBERT C. MITCHELL
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

*Property to be searched*

Storage units 1101, 1103, and 1104 located at 4317 Campbells Run Road, Pittsburgh, PA. These storage units are located at a storage facility called STORExpress with multiple storage units available for rent. The number of the storage unit is displayed on the upper right side of the unit garage door and is clearly identifiable.



## ATTACHMENT A

*Property to be searched*

The premises located at 1000 Heckler Dr., Green Tree, PA is a single family, two story residence with an attached garage located on Heckler Drive.



## ATTACHMENT B

*Property to be seized*

1. All machine parts, vehicle parts, aircraft parts, and parts of any kind, including hardware such as washers, screws, bolts, and hardware of any kind. All scales, stools, chairs, and manufactured products of any kind relating to violations of **18 U.S.C. § 38 (fraud involving aircraft or space vehicle parts), 18 U.S.C. § 287 (false, fictitious or fraudulent claims), 18 U.S.C. § 1343 (fraud by wire), 18 U.S.C. Section 371 (conspiracy), and 18 U.S.C. § 1956 (money laundering),** by Don Smith, Lori Smith, Nicole Smith, and Elizabeth Czajkowski.